IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BILLIE ROGERS, | ) | CASE NO. 5:20CV698 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | **MEMORANDUM OPINION & ORDER** |
| Defendant. | ) | |

Plaintiff Billie Rogers ("Rogers") seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB"). Doc. 1. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned Magistrate Judge pursuant to the consent of the parties. Doc. 9.

This is the second time Rogers has appealed the decision of the Administrative Law Judge ("ALJ") finding her to be not disabled. The first time Rogers appealed, this Court issued a Memorandum Opinion & Order (hereinafter, "Order") reversing and remanding the ALJ's decision because the ALJ's credibility assessment was flawed. The Court instructed the ALJ, on remand, to reassess Rogers' credibility. The Court discussed four problematic portions of the ALJ's credibility assessment, including, primarily, a report from Rogers' former employer about her performance at work, which the ALJ had ignored. On remand, the same ALJ issued a new decision finding Rogers to be not disabled. And now Rogers appeals that decision.

In reviewing the ALJ's current decision, the Court finds that the ALJ *again* ignored the employer's reports about Rogers' performance at work while assessing her credibility.

1

Accordingly, the ALJ's credibility assessment is flawed, and the Commissioner' decision is **REVERSED** and **REMANDED**. On remand, the ALJ is to:

(1) reassess Rogers' statements regarding her symptoms;

(2) expressly discuss the reports from Rogers' former employer found at Exhibit 6E (Tr. 214-215);

(3) to the extent that the ALJ finds that Rogers' treatment was conservative, the ALJ will explain what he means by "conservative treatment"; and

(4) if the ALJ finds that Rogers' symptoms have improved, the ALJ will consider whether an award of benefits is warranted for the time period prior to any such improvement.

## I. Background

Rogers applied for disability on August 30, 2014, alleging a disability onset date of the same.[1] In 2016, an ALJ held a hearing (Tr. 27-63) and subsequently issued a decision finding that Rogers was not disabled (Tr. 12-22). The Appeals Council denied review. Tr. 1-4. Rogers appealed to this Court, and this Court issued an Order in 2018 reversing the Commissioner's decision. Tr. 483; *Rogers v. Comm'r of Soc. Sec.*, Case No. 5:17-cv-01087. The Court's express instructions were that the ALJ should reassess Rogers' statements and her credibility. Tr. 510.

On remand, the Appeals Council vacated the ALJ's decision and remanded the case to the same ALJ. Tr. 512. The ALJ held a second hearing on October 30, 2018. Tr. 419. On November 9, 2019, the ALJ issued a second decision, again finding that Rogers was not disabled. Tr. 402-411. Rogers requested review of the ALJ's decision by the Appeals Council (Tr. 369) and, on February 27, 2020, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 356.

---

[1] Rogers' initial disability onset date was March 4, 2014, but she later amended it to August 30, 2014. Tr. 12, 164.

Rogers appeals, arguing that the ALJ's decision is erroneous and not supported by substantial evidence. Specifically, Rogers alleges that the ALJ made the same mistakes he did the first time despite the Court's Order detailing those errors.

## II. Law & Analysis

Generally, "on the remand of a case after appeal, it is the duty of the lower court, or the agency from which appeal is taken, to comply with the mandate of the court and to obey the directions therein without variation and without departing from such directions." *Mefford v. Gardner*, 383 F.2d 748, 758 (6th Cir. 1967). "[I]f the cause is remanded with specific directions, further proceedings in the trial court or agency from which the appeal is taken must be in substantial compliance with such directions; and if the cause is remanded for a specified purpose, any proceedings inconsistent therewith is error." *Id*. "Deviation from the court's remand order in subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review." *Sullivan v. Hudson*, 490 U.S. 877, 886 (1989) (citing *Mefford v. Gardner*, 383 F.2d 748, 758-759 (6th Cir. 1967)). These principles and authorities are not an absolute bar to an ALJ going beyond a district court's order but they do prohibit any such action that is inconsistent with any express or implied order. *Hollins v. Massanari*, 49 Fed. Appx. 533, 536 (6th Cir. 2002).

### A. The Court's prior Order

This Court reversed and remanded the ALJ's prior decision due to deficiencies in the ALJ's credibility assessment. The Court cited four specific instances of unexplained conclusions that the ALJ made when assessing Rogers' credibility, two of which are relevant here: the ALJ's one-sided conclusion of why Rogers was terminated from her prior job, in which the ALJ relied on a questionnaire completed by Rogers' employer but not notes from a follow-up telephone call

3

made by the Agency; and the ALJ's statement that Rogers' treatment was conservative.[2] Tr. 508-509. The relevant portion of the Court's Order is as follows:

> The Court is unable to determine whether substantial evidence supports the ALJ's decision due to unexplained conclusions in the ALJ's decision. For instance, the ALJ doubted Rogers' credibility because she testified she was let go from her last job due to her "bad attitude." The ALJ observed that her prior employer did not state that she lost her job due to a "bad attitude" on a Social Security Administration form. Tr. 17. However, the employer did explain that Rogers was frequently absent, was often caught on camera not doing her work but walking around and "lollygagging," her language was inappropriate for the workplace for other employees and customers, she persisted in using "colorful" language despite being "talked to about it," she would not comply with the break policy and used "juvenile techniques" to describe what she was doing, she would purposely let wrong/faulty products pass inspection, and she did her job correctly at times and at other times "apparently she would not care and just wander around." Tr. 214-215. These items can reasonably be summed up as having a "bad attitude."[2] In other words, Rogers' characterization of her work problems were consistent with her employer's characterization of her work problems.
>
>> [FN2] The employer filled out a form and, subsequently, provided explanations during a phone call initiated by the agency. Tr. 214-215. The ALJ did not reference the explanations provided in the phone call, although it was part of the evidence considered by the ALJ. Tr. 25 (listing Exhibit 6E).
>
> Second, the ALJ stated that, despite the severity of Roger's allegations, her treatment was "conservative." Tr. 17. Rogers saw Corcelli or Ball at Portage Path about twice a month and was regularly prescribed and took numerous medications. The ALJ does not explain what other treatment Rogers could or should have undergone. Without more, the ALJ's observation about Rogers' conservative treatment rings hollow.

Tr. 508. The Court stressed that the errors were not the ALJ's reliance upon the evidence he cited, but his failure to explain the conclusions that he drew from it and/or his avoidance of contradictory evidence. Tr. 508-510. The Court's remand instructions state, "On remand, the ALJ will reassess Rogers' statements and her credibility and revisit the weight given to opinion

---

[2] The other two reasons the Court cited are the ALJ's unexplained comment that Rogers had not been arrested or attacked anyone, and the ALJ's reliance on Rogers' testimony that her condition had remained unchanged for years but failing to recognize that she testified that, as she aged, she was unable to tolerate others' behavior. Tr. 508-509. Those are not at issue in this case because the ALJ did not rely on that evidence in his current decision.

evidence." Tr. 510.[3]

### B. The evidence from Rogers' former employer

For context, the following is a summary of the two items in the record from Rogers' employer:

(1) In September 2014, a representative from Rogers' last place of employment, Joan Fisk, completed a work activity questionnaire on behalf of Rogers.  Fisk indicated that Rogers completed all her work duties without assistance, regularly reported to work as scheduled, took the same amount of time to complete her work as other employees, received no special accommodations, was 80% as productive as other employees, was frequently absent from work, and her work was satisfactory when compared to other employees.  Tr. 150-151.

(2) In October 2014, the social security agency contacted Fisk to ask about Fisk's indication that Rogers was 80% productive, given the fact that Fisk had not indicated that Rogers required special assistance or had any problems.  Fisk explained that Rogers was frequently absent, was often caught on camera not doing her work but walking around and "lollygagging," her language was inappropriate for the workplace for other employees and customers, she persisted in using "colorful" language despite "being talked to about it," she would not comply with the break policy and used "juvenile techniques" to describe what she was doing, and she would purposely let wrong/faulty products pass inspection.  The employer believed that she had the capacity to do the job correctly because she would do it correctly but then "apparently she would not care and just wander around."  Her employer tried putting her in another position to no avail and she was eventually let go "due to all-around performance and not doing her job."  Tr. 214-215.

### C. The ALJ's decisions

<u>First decision</u>: In his first decision, the ALJ found that Rogers' statements about her symptoms were not credible, relying in part on the employer's August 2014 questionnaire:

In August 2014, the claimant lost her job at Kiltex Corporation (Exhibit 2D/1).  In a form requested by the Social Security Administration, her employer noted she did not receive any special accommodations while working, and was about 80% as productive as other employees.  (Exhibit 2D/1,2).  Despite the claimant's allegations that she lost this job due to her bad attitude, the Kiltex Corporation did not indicate that on the form.

Tr. 17.  This Court wrote that it was error for the ALJ to doubt Rogers' statement that she lost

---

[3] The Court explained that the ALJ's treatment of the opinion evidence was, in part, dependent upon his faulty credibility assessment.  Tr. 510.

5

her job at Kiltex due to her bad attitude because, in doing so, the ALJ ignored evidence that the employer told the Agency that Rogers was frequently absent, often caught on camera not doing her work and walking around lollygagging, used inappropriate language around coworkers and customers despite being asked to modify her language, not complying with the break policy and using "juvenile techniques" to describe what she was doing, purposely letting wrong/faulty products pass inspection, and doing her job correctly at times and at other times "apparently she would not care and just wander around." Tr. 508. The Court observed that the employer's remarks generally described an employer who had a "bad attitude." Tr. 508.

<u>Second decision</u>: On remand, the ALJ again discusses the August 2014 questionnaire completed by her employer. He did not cite or refer to the employer's October 2014 remarks. The ALJ explained,

> In August 2014, the claimant lost her job at the Kiltex Corporation. In a form requested by the Social Security Administration, her employer noted she did not receive any special accommodations while working, and was about 80% as productive as other employees. Some answers on the questionnaire conflict with each other. For example, on page one the employer stated that the claimant regularly reports for work as scheduled. However, on page two, she indicates that the claimant is frequently absent from work. In addition, at the top of page two, the employer indicates that the claimant was only 80% as productive as other employees, but describes her work as satisfactory at the bottom of page two. The Work Activity Questionnaire does not indicate why the claimant lost her job in August 2014. The claimant has alleged that it was due to a "bad attitude." (Exhibit 2D). Considering the conflicting statements in the questionnaire, I do not find it supports the claimant's allegation that she is unable to engage in full-time work activity due to bad attitude or alleged difficulty getting along with others….

Tr. 406-407. The ALJ erred because he again ignored the employer's October 2014 remarks about Rogers' bad attitude that resulted in her termination. While true that the employer's August 2014 form contained contradictory answers, that observation is not relevant to the ALJ's conclusion: that the questionnaire does not support Rogers' statements that she is unable to work due to her bad attitude. Conspicuously absent is any mention of the employer's October 2014

6

remarks.

The ALJ continued,

….The [August 2014] opinion is further contradicted by evidence in the record regarding the claimant's activities such as visiting her in-laws, selling kittens, running errands for family members, socializing with her father's friends, traveling out of State, and helping friends with cleaning. These activities all indicate a higher level of interacting with others than suggested by the employer.

Tr. 407 (exhibit citations omitted).[4] The problem with this portion of the ALJ's explanation is that the August 2014 questionnaire did not ask about how Rogers got along with others. And, in the employer's remarks from October 2014, the employer described the various ways that Rogers purposefully avoided her job duties, used inappropriate language, and regularly did not show up for work. Those complaints by her employer regarding her work performance are not entirely germane to her ability to interact with others.

Simply put, the ALJ seems determined to avoid a problematic piece of evidence: the October 2014 remarks from Rogers' former employer describing her bad attitude.[5] The ALJ's omission of this evidence is inconsistent with this Court's prior remand Order to reassess Rogers credibility and detailing the October 2014 employer reports that the ALJ ignored. That, alone, is reversible error. *Mefford*, 383 F.2d at 758 ("….[I]f the cause is remanded for a specified purpose, any proceedings inconsistent therewith is error."); *Hudson*, 490 U.S. at 886 ("Deviation from the court's remand order in subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review); *Hollins*, 49 Fed. Appx. 533, 536 ("…the [ALJ] may not do anything expressly or impliedly in contradiction to the district court's remand order…. they [] prohibit any such action that is inconsistent with any express or implied order.").

---

[4] The Court notes that the ALJ mentioned Rogers' activities as "visiting her in-laws," but, actually, Rogers' in-laws had once visited with Rogers and her husband, staying in their house. Tr. 290 (visit to counselor in which Rogers indicated that she was "recovering" from the visit and that she believed her in-law's child stole her medication).

[5] Additionally, the ALJ, again, refers to Rogers receiving conservative treatment without providing any explanation for why the treatment she received was conservative. Tr. 406.

And because the ALJ again cherry picks information provided by the employer when finding that Rogers' allegations regarding her symptoms are not entirely credible, and his conclusion is not, in any event, supported by the evidence he cites, the ALJ's credibility assessment is faulty for this separate reason and requires remand. *See, e.g., Minor v. Comm'r of Soc. Sec.*, 513 Fed. Appx. 417, 435 (6th Cir. 2013) (error occurs when the ALJ cherry-picks select portions of the evidence when discrediting the claimant's statements rather than discussing a full analysis of the evidence); *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994) (insufficient credibility determination requires reversal).

Accordingly, the ALJ's decision is reversed and remanded. On remand, the ALJ will:

**(1)** reassess Rogers' statements regarding her symptoms;

**(2)** expressly discuss the remarks from Rogers' former employer found at Exhibit 6E (Tr. 214-215);

**(3)** to the extent that the ALJ finds that Rogers' treatment was conservative, the ALJ will explain what he means by "conservative treatment"; and

**(4)** if the ALJ finds that Rogers' symptoms have improved, the ALJ will consider whether an award of benefits is warranted for the time period prior to any such improvement.

## VII. Conclusion

For the reasons set forth herein, the Commissioner's decision is **REVERSED and REMANDED** for proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: April 20, 2021

/s/Kathleen B. Burke
Kathleen B. Burke
United States Magistrate Judge